IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

TRAVIS FENDER                                                                                    PLAINTIFF

vs.            CASE NO. 3:22-cv-172-LPR

BRYAN PANNELLS AND,
NUCOR YAMATO STEEL COMPANY                                            DEFENDANTS

**<u>BRIEF IN SUPPORT OF RESPONSE TO MOTION TO DISMISS</u>**

COMES NOW THE PLAINTIFF, Travis Fender, by and through his attorneys, who for the Brief in Support, states:

Defendants argue the Complaint should be dismissed for failure to state a claim. A few things should be made clear. First, Pannells is only sued under the FMLA. The facts alleged in the Amended Complaint make it clear that he is an appropriate Defendant. Second, although the Complaint could be more clear in some places, Defendants arguments are premised on repeating the words "threadbare" and "conclusory" a lot, and violating the standard of review by not viewing the Complaint as a whole, not crediting the facts, not drawing favorable inferences, and making the false claim that Plaintiff must either plead a prima facie case under *McDonnell Douglas*, and then establish pretext, *or* plead direct evidence.

**I.        Standard of Review**

When ruling on a motion to dismiss, the "Judge must accept as true all of the factual allegations contained in the complaint." <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007). A complaint "need only give the defendant fair notice of what the claim is and

1

the grounds upon which it rests. Id., at 93. To survive a motion to dismiss, the complaint must "state a plausible claim for relief' that "permits the Court to infer more than the mere possibility of misconduct" based upon "its judicial experience and common sense." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1950 (2009). While a plaintiff *is not* required to plead facts that constitute a prima facie case in order to survive a motion to dismiss, they must be "enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). To state a claim, "a complaint need not alleged detailed facts; a plaintiff need only provide the grounds of his or her entitlement to relief. Bare v. NPC Int'l, Inc., Civ. No. 09-2092 (W.D.Ark. 12/14/09) (citing Benton v Merrill Lynch & Co., Inc. 524 F.3d 866, 870 (8th Cir. 2008). The facts in a complaint are to be considered as true and construed in the favor of the plaintiff, "even if it strikes a savvy judge that actual proof of those facts is improbable." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955 (2007). "It is not necessary to recite the elements of proof required to sustain a claim, and indeed, 'a formulaic recitation of the elements of a cause of action will not do." Fitzmorris v. Culpepper Co. of Fayetteville, Case No. 09-5233, DE 11 (W.D. Ark. 2010) (Citing Twombly).

"The complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009). Rule 8 does not "require a plaintiff to plead 'specific facts' explaining precisely how the defendant's conduct was unlawful." Id., at 595. "Rather, it is sufficient for a plaintiff to plead facts indirectly show unlawful behavior, so long as the facts pled 'give the defendant fair notice of what the claim is and the grounds upon which it rests . . . .'" Id. "Rule 8 does not require a plaintiff to

2

plead facts tending to rebut all possible lawful explanations for a defendant's conduct." Id., at 596. "Not every potential lawful explanation for the defendant's conduct renders the plaintiff's theory implausible." Id., at 597. All reasonable inferences are still to be drawn. Id., at 595.

**II.     Specifics of case where Motions to Dismiss have been denied.**

In Scurlock v. Windstream Comm., Inc., 2011 WL 2357899 (E.D. Ark. 2011), this Court denied a similar motion. The Court held:

> In his amended complaint Scurlock ssets out facts that state a plausible claim for discrimination under the ADA against Windstream. Specifically, Scurlock alleges that he is disabled within the meaning of the ADA, that Windstream regarded him as having an impairment, that he was one of the top performers in his department. He alleges that he was initially provided with an appropriate accommodation. He also claims that Windstream refused to continue his accommodation and that he suffered harassment and eventual termination as a result of the accommodation and disability. Based on these facts it is reasonable to draw the inference that Windstream is liable under the ADA.

Accordingly, the teaching of Scurlock is that in order to plead an ADA claim successfully, the impairment need not identified by name, its effects need not be identified specifically, the accommodation need not be identified specifically, and the harassment need not be identified specifically, nor must the facts underlying intent be named specifically.

Additionally, Judge Moody has denied a motion to dismiss based on the following allegations:

> In his Complaint, Plaintiff specifically states that he performed his job well, he was unjustly accused of falsifying documents and was terminated by Parker. He states that the accusations occurred after Plaintiff testified in a deposition. Plaintiff contends that similarly situated Caucasians were not treated in this manner. According to the Complaint, Plaintiff grieved his termination and was reinstated.

3

Collins v. Parker, No. 5:11CV00077 JMM, (E.D.Ark. 8/2/11). Here, it is notable that the comparators were not identified by name, job title, supervisor, decision-makers, or exact type of offense.

In Williams v. Norris, Case No. 11-1613 (8th Cir. 10/26/11), the Eighth Circuit ruled that a hostile work environment claim was adequately stated where:

> the complaint alleged (albeit in different sections) that Williams suffered discriminatory practices; that her supervisor charged her with false disciplinary actions and exposed her breasts to Williams in inappropriate fashion; that she was mistreated; and that this conduct occurred because of her race and gender.

Id., at 2. Notably, the discipline is not specifically described, and the only specific description of harassing conduct was exposure of breasts, which did not mention the context or number of times. Nor was any mention made of the evidence on which intent was alleged.

In Fitzmorris v. Culpepper Company of Fayetteville, Inc., Judge Hendren denied a motion to dismiss where the plaintiff alleged she was 59, her manager was 23, made derogatory comments about older people, cut her hours, and that similarly situated younger persons were not fired. Case No. 5:09-cv-05233, D.E. 11, at 2 (W.D. Ark. 5/5/10).

In Drye v. University of Arkansas for Medical Sciences, 2011 WL 30097 (E.D. Ark. 2011), Judge Holmes ruled that the complaint was sufficient, reasoning thus:

> In her amended complaint, Drye alleges that she "was terminated in February of 2009 under circumstances similarly situated males ... [and] persons under the age of 40 ... were not." She also alleges that "Defendants have deprived Plaintiff of her clearly established right to be free from gender ... discrimination" and "discriminated against her on the basis of her sex ... and age."

4

> Although Drye's complaint does not include an abundance of factual detail, she has offered more than the naked assertion that similarly situated persons were treated more favorably. Drye has given some specificity to her allegations by asserting that similarly situated persons were not terminated while she was terminated. "For some courts, that kind of specificity is sufficient." (listing cases in which similar allegations have been deemed sufficient and adopting that approach). Although Drye fails to name even one similarly situated employee who received disparate treatment, "there is nothing about Federal Rule of Civil Procedure which requires the naming of names ."

Id., at 2-3 (citations omitted).  Thus, in order to provide a comparator, a plaintiff need only identify the conduct of which they were accused, and allege that persons not in the protected class were not fired for similar acts – not to name names, give dates, the specific facts of what the comparators did, who their bosses were, who the decision-makers were, etc.  This is consistent with Rodgers v. U.S. Bank, NA, 417 F.3d 845 (8th Cir. 2005), where the focus for comparators is on whether or not there was similar misconduct, and that is all, at the prima facie stage of the case, as well as the holding of Braden that legitimate reasons for conduct do not have to be defeated, which means that the plaintiff would only have to meet the light prima facie burden, not the onerous pretext burden of McDonnell Douglas.

In Sullivan-Robinson v. Arkansas Parole Board, 2011, WL 3235904 (E.D.Ark. 2011), Judge Wright found that the plaintiff stated sufficient facts when she stated that: she was denied vacant positions in favor of outsiders, hired others without conducting interviews, hired persosn with less experience and qualifications, and indicated that a single mother with two small children was not a suitable candidate.  Id., at 4-5.

In Green v. Pulaski County, Arkansas, 2010 WL 4269200, (E.D.Ark. 2010), the defendant argued that the plaintiff failed to state a claim for discharge because his complaint stated that he had been fired after pleading guilty to a crime.  The Court found

5

a claim was stated because the plaintiff alleged white employees who had engaged in similar conduct had not been fired.  Id., at 1.

In Foster v. Stephens, Inc., 2010 WL 313420 (E.D.Ark. 2010), the plaintiff alleged that he had been subjected to discriminatory ridicule and humiliation by his supervisor for two weeks and demoted based on his race, and that no appropriate actions were taken to investigate his complaint.  Judge Moody expressed doubts as to the viability of the claim at summary judgment, but found it stated a claim.  Id., at 3.  The specifics of the allegations included a "verbal attack" and general allegations that he had been subjected to and witnesses "racial comments, slurs, and jokes made by other white officers."  Id., at 1.

In Goal v. Retzer Resources, Inc., 2009 WL 5174181 (E.D.Ark. 2009), dismissal of FLSA  1981, and ADA claims was denied.  Goal alleged that he worked in excess of forty hours as a cook, was not paid at all for time over forty hours, that he did not have managerial authority or duties, promised to pay him overtime and fail to do so, and that he thereby lost wages.  Id., at 4.  His race claim claim alleged he was black, that he was falsely told he was a manager so he would work overtime, that he was teased, called boy, that he had a mental breakdown, and was fired.  Id., at 5.  Using the phrase "Al l Defendants" was held to be sufficient notice that a person was being sued individually for retaliation.  Id., at 5-6.

**III.    Even if Plaintiff were required to plead a prima facie case, dismissal is not appropriate.**

Although Plaintiff is not required to make out a prima facie case in the Complaint, a look at the prima facie case can be useful, in that once this is established, Plaintiff

need not disprove a legitimate, non-discriminatory reason.  As Judge Loken has noted, a plaintiff can make out a prima facie case by establishing: (1) they are in a protected class; (2) they are qualified; (3) they suffered an adverse action; and (4) facts permitting an inference of discrimination, such as replacement by a person not in the protected class, evidence of pretext, or a comparator.  Putman v. Unity Health System, 348 F.3d 732, 736 (8th Cir. 2003).  "The threshold of proof necessary for a prima facie case is minimal, and the burden is not onerous."  Gipson v. Headwaters, Inc., 5:08-cv-00023-JLH, D.E. 35, at 6 (E.D.Ark. 2008) (citing Davenport v. Riverviews Gardens Sch. Dist., 30 F.3d 940, 944 (8th Cir. 1994)).  In Young v. Warner-Jenkinson Co., 152 F.3d 1018, 1022-23 (8th Cir. 1998), the Eighth Circuit noted that "the threshold of proof necessary to establish a prima facie case is minimal" and that ""[t]he prima facie burden is not so onerous as, nor should it be conflated with, the ultimate issue" of discriminatory action."  Id., at 1022 n.5 (citing Rose-Maston v. NME Hosp., Inc., 133 F.3d 1104, 1109-10 (8th Cir. 1998); Davenport v. Riverview Gardens Sch. Dist., 30 F.3d 940, 944 (8th Cir. 1994); Landon v. Northwest Airlines, Inc., 72 F.3d 620, 624 (8th Cir. 1995); and Williams v. Ford Motor Co., 14 F.3d 1305, 1308 (8th Cir. 1994).  In Young, the Eighth Circuit also noted that "the prima facie case will necessarily vary in different factual situations" and that the proof needed is "not inflexible" and "varies somewhat with the specific facts of each case."  Young, 152 F.3d at 1022 (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 n.13, 93 S.Ct. 1817 (1973); Hindman v. Transkrit Corp., 145 F.3d 986, 990-91 (8th Cir. 1998); and Miners v. Cargill Comm., Inc., 113 F.3d 820, 824 n.7 (8th Cir. 1997), cert. den'd, 522 U.S. 981, 118 S.Ct. 441, 139 L.Ed.2d 378 (1997).

**IV.     ADA/ACRA Claims**

Even Defendants do not appear to dispute that there was an adverse action. This leaves issues of disability, qualification, and intent/causaation

A.    **Actual Disability**

An actual disability is an impairment that substantially impairs one in a major life activity.   "Major life activities include, but are not limited to: Caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, sitting, reaching, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, interacting with others, and working." 29 CFR 1630.2(i)(1)(i).   The EEOC passed regulations under the Americans with Disability Act after the law was amended in 2009.  "The term 'substantially limits' shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA. "Substantially limits" is not meant to be a demanding standard."  29 CFR 1630.2(j)(1)(i). "An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting."  29 CFR 1630.2(j)(1)(ii). "The determination of whether an impairment substantially limits a major life activity requires an individualized assessment."   29 CFR 1630.2(j)(1)(iv).   "The comparison of an individual's performance of a major life activity to the performance of the same major life activity by most people in the general population usually will not require scientific, medical, or statistical analysis."   29 CFR 1630.2(j)(1)(v).   "The determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures."   29 CFR 1630.2(j)(1)(vi).  Episodic impairments can be disabilities, as can conditions lasting less than six months.  29 CFR 1630.2(j)(1)(vii), (ix).

The nature of an anxiety attack renders discussion in great detail unnecessary. Pllaintif has pled that when he has an anxiety attack, he is unable to work, breath, think. The condition is measured when it is at its worst and without regard to mitigating measures, such as medications, to determine if it is disablling. Thus, in this case, disability is measured at the point that one goes through an anxiety attack.

### B.    Regarded as Disabled

The "'regarded as' prong of the definition of disability, which does not require a showing of an impairment that substantially limits a major life activity or a record of such an impairment." 29 CFR 1630.2(g). "An individual meets the requirement of "being regarded as having such an impairment" if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. 12111(3)(A).

Here, Plaintiff has pled that he informed them in numerous ways of his conditions.

### C.    Qualification

Once again, as an element of the prima facie case, this is a low burden, and furthermore, it is not required to be pled. Furthermore, the legitimate, non-discrminatory reason for Defendant's conduct may not be used to attack qualification. *Davenport v. Riverview Gardens Sch.Dist.*, 30 F.3d 940, 944-45 (8th Cir. 1994). Also, an employee will only be required to meet those educational or experience requirements the employer actually requires. *EEOC v. Wal Mart*, 477 F.3d 561, 569 (Eight Cir. 2007).

Here, Plaintiff has pled that he operated forklifts, that he had years of experience operating forklifts and other equipment, that he had been trained by Nucor and certified by them to drive forklifts, and that he did that work satisfactorily. Going out on FMLA leave dooes not make one unqualified as the employer must give the employee that leave if they are qualifying.

D. **Reasonable Accommodation**

Medical leave, including under the FMLA, is a reasonable accommodation. *Browning v. Liverty Mut. Ins. Co.*, 178 F.3d 1043, 1049 (8th Cir. 1999) 29 CFR 1630.2(o)(2); 29 C.F.R. 825.702; *Ruark v. Ark. Dem.-Gaz., Inc.*, 4:13-cv-283, D.E. 24 (E.D.Ark. 2014); United States Equal Employment Opportunity Commission, *The Family Medical Leave Act, the Americans with Disabilities Act, and Title VII Civil Rights Act of 1964, Fact Sheet*, http://www.eeoc.gov/policy/docs/fmlaada.html. Plaintiff needed FMLA leave. He had one week in December, and another four weeks or so in January-February, until his termination, so his mandated 12 weeks of FMLA had not expired.

E. **Retaliation**

Retaliation claims have three elements: (1) protected activity; (2) adverse action; and (3) causation. *Shaver v. Independent Stave C*o., 350 F.3d 716, 723 (8th Cir. 2003) (ADA); Being qualified is not an element of the case. *Stebbins v. Legal Aid*, 2012 U.S.Dist. LEXIS 158796 (W.D. Ark. 2012) ("Unlike a plaintiff in an ADA discrimination case, a plaintiff in an ADA retaliation case need not establish that he is a 'qualified individual with a disability.'" quoting Krouse v. Am. Sterilizer Co., 126 F.3d 494, 502 (3d Cir. 1997)).

Requests for accommodation are protected, and this is true so long as there is a reasonable, good-faith belief that the employee was entitled to accomodation. *Heisler v. Metropolitan Council*, 339 F.3d 622 (8th Cir. 2003). As stated above, medical leave under the FMLA is a reasoanble accommodation. Adverse action is not disputed. This leaves causation, which is discussed below.

### V.    FMLA

Defendants mainly argue a lack of intent, and that Mr. Pannells is not subject to suit. Under the FMLA, "an eligible employee shall be entitled to a total of twelve workweeks of leave during any twelve-month period . . . because of a serious health condition that makes the employee unable to perform the functions of the position of such employee" 29 U.S.C. § 2612(a)(1)(D). Most FMLA cases involve the following elements in a prima facie case: (1) eligible employee, (2) covered employer, (3) serious health condition, and (4) appropriate notice of that serious health condition to the employer. From there the remaining elements diverge based on the type of theory pursued. If a retaliation is pursued the elements are: (5) an adverse action; and (6) motivated by the use of FMLA rights. Eighth Cir. Mod. Jury Instr. 5.81A. If a failure to reinstate claim is pursued, the only remaining element is: (5) that on the employees return to work, they were denied reinstatement to a comparable position. Eighth Cir. Mod. Jury Instr. 5.81F. Finally, if an interference claim is pursued, the remaining elements are: (5) an interference with FMLA rights; that (6) causes an injury. *Throneberry v. McGehee-Desha County Hosp.*, 403 F.3d 972 (8th Cir. 2005). Defendants rightly do not argue eligible employee, covered employer, serious health

condition, notice, or an adverse action. Any violation of the regulations or statutes is an interference with FMLA rights. 29 CFR 825.220(d).

Here, Plaintiff has clearly pled that he gave appropriate notice under Rules 29 CFR 825.302-303, which do not require that FMLA even be requested by name. The FMLA regulations require that notice of rights and obligations be given, and they were not. 29 CFR 825.300. They require that a designation be made, and it was not. Under 29 CFR 825.216 Plaintiff is entitled to reinstatement, unless the Defendant can prove that it would have fired him regardless. Here, Plaintiff clearly pled he was out on leave and not allowed to return.

As to Mr. Pannells, Defendant has argued that he is only liable if he: (1) had the power to hire or fire the employee; (2) supervised or controlled employee work schedules; (3) determined the rate and method of payment; and (4) maintained employment records. Plaintiff has now pled that Mr. Pannells disciplined him, altered his work schedule to give him the hardest jobs, denied him assistannce other employees would get, decreased his pay by denying him bonus pay, was receiving notice of Plaintiff's need for leave, was refusing to give him notice of rights and obligations under the FMLA, refusing to designate his leave as FMLA qualifying, annd got him fired by claiming plaintiff did not commuicate in regard to his time off.

**VI.   Intent**

This leaves the issue of intent. The claims are intertwined, so the same facts would apply to all claims.

Immediately on his return from his first FMLA leave, Plaintiff was disciplined for conduct that is normal at that facility, even though he had been trained to stack in that

way materials, and even though other employees stacked materials in the same way. During the second leave, Plaintiff was terminated while he was on leave, in other words, while engaging in protected activity. So that would seem to establish timing as evidence.

Intent can be shown where an employee is treated more harshly than other employees violating a similar rule. *Wilmington v. J.I. Case Co.*, 793 F.2d 909 (8th Cir. 1986). He was denied bonus pay even though policy did not require it. Failure to use normal procedures is a basis for showing ient. *Young v. Warner-Jenkinson Co.*, 152 F.3d 1018, 1024 & n.6 (8th Cir. 1998).

Plaintiff was then subjected to doing the worst, most dangerous jobs, without help, even though such jobs normally rotate, and employees are allowed to get help when they get behind. Pannells paid extra attention him to make his life harder at the plant, by trying to cause him problems with his crew leader, the nurse, and other employees. Closer supervision of employees who have complained about illegal practices is evidence of pretext. *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 770 (2d Cir. 1998)

Throughout both leaves, Plaintiff was not given the require notices of his rights and obligations under the FMLA, or given a designation of FMLA leave. A history of discriminatory activity can evidence intent.

In the latter leave, Defendants falsely claimed not to have received communications from him about his absence. False explanations for a termination show intent. *Shager v. Upjohn Co.*, 913 F.2d 398 (7th Cir. 1990); *Edwards v. U.S. Postal Service*, 909 F.2d 320 (8th Cir. 1990).

13

Even after his termination, Nucor been so vindictive as to refuse to return his property, which suggests animus against him.

**VII. Even if the Court finds the claim deficient in some respect, Plaintiff should be permitted to amend his Complaint.**

"Leave to amend should be freely granted unless there are compelling reasons 'such as undue delay, bad faith, or dilatory motive . . . undue prejudice to the non-moving party, or futility of the amendment." Alternate Fuels, Inc. v. Cabanas, 538 F.3d 969, 974 (8th Cir. 2009). That is not the case here.

WHEREFORE, Plaintiff prays for an Order denying the Motion to Dismiss, or allowing him to Amend his Complaint if it is insufficient as it stands., and for all other appropriate relief.

    Respectfully Submitted,

    SUTTER & GILLHAM, P.L.L.C.
    Attorneys at Law
    P.O. Box 2012
    Benton, Arkansas 72018
    (501) 315-1910

By:    */s/ Lucien Gillham*
    Lucien Gillham, Ark. Bar #99199
    lucien.gillham@sbcglobal.net